IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LORETTA NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:20-cv-03213-RK |
| | ) |
| TJ BRANSFIELD, NIANGUA R-V SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendants TJ Bransfield and Niangua R-V School District's motion for summary judgment. (Doc. 114.) The motion is fully briefed. (Docs. 115, 118, 119, 120, 121, 122.) Also pending is "Plaintiff's motion to strike or have deemed admitted certain responses by Defendants within Defendants' response to Plaintiff's statement of additional material and controverting facts." (Doc. 125.) After careful consideration, and for the reasons stated below, Defendants' motion for summary judgment (Doc. 114) is **DENIED,** and Plaintiff's motion (Doc. 125) is **DENIED as moot.**

### Background[1]

During the 2019-2020 school year, Plaintiff Loretta Nelson and Sam Porter held the positions of Co-Directors of Maintenance with the Niangua R-V School District ("District"). (Doc. 115, ¶ 1.) Sam Porter is also a bus driver and bus mechanic for the District. (*Id.* at ¶ 2.)

On October 31, 2019, Plaintiff filed a purported class action lawsuit against the District, alleging violations of the Fair Labor Standards Act ("FLSA") related to her pay and the pay of her fellow employees, which she later amended to include a retaliation claim. (*Id.* at ¶ 3.) That lawsuit ("Prior Lawsuit") was settled at a court-mandated mediation on April 14, 2020. (*Id.* at ¶ 4.) On July 6, 2020, the Prior Lawsuit was dismissed pursuant to the settlement. (Doc. 120, ¶ 48.)

Defendant Bransfield was aware the settlement agreement included the release of overtime claims and the retaliation claim filed against him by Plaintiff. (*Id.* at ¶ 23.) Board member David

---

[1] The following facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted facts properly controverted, facts asserted that are immaterial to the resolution of the pending motion, facts asserted that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

Johnston testified in a deposition that, following the settlement, he asked Defendant Bransfield if Plaintiff was coming back to work at the District because he did not know the terms of the settlement. (Doc. 120-4 at 2-3 (Plaintiff's Exhibit D).) [2]

On April 21, May 15, and June 1, 2020, the Department of Elementary and Secondary Education ("DESE") issued and published Administrative Memos detailing funding cuts and a series of progressive expenditure restrictions on public school districts during the 2019-2020 (the then current) school year due to the COVID-19 pandemic. (Doc. 115 at ¶ 5.) As a result of the funding cuts, public school districts were informed they would not receive a classroom Trust Fund payment in May 2020 and would receive cuts to their Funding Formula funding (the primary method the state of Missouri uses to distribute money to public schools) for that school year. (*Id.* at ¶ 6.) In Defendant Bransfield's recommended 2020-21 budget, he estimated a 10% reduction in revenues, but knew the potential funding restriction could be some amount less than that. (Doc. 120 at ¶ 30.)

On June 19, 2020, the Board of Education (the "Board") approved the budget recommended by Defendant Bransfield for the 2020-21 school year that would require the District to operate at a deficit. (*Id.*; Doc. 115 at ¶ 8.) The District approved the job descriptions of non-certified (i.e., non-teacher) employees for the 2020-2021 school year, including Plaintiff, and approved the employment of 19 non-certified employees for the 2020-2021 school year, again including Plaintiff. (Doc. 120 at ¶¶ 32, 32; Doc. 115 at ¶ 9.) The approved budget took into consideration potential funding restrictions and Plaintiff's employment with the District. (Doc. 120 at ¶ 33.) On or about June 22, 2020, the District received its monthly Funding Formula payment in the amount of $112,926.93, which was approximately $65,000 less than the amount it received in the preceding months. (Doc. 115 at ¶ 7.)

On June 24, 2020, Defendant Bransfield resigned from his position with the District effective June 30, 2021, at the end of the upcoming 2020-2021 school year. (Doc. 115 at ¶ 10.) On June 30, 2020, DESE issued and published an Administrative Memo stating that, due to the continued economic downturn caused by COVID-19, public school districts were to incur $133.2 million in restrictions for the upcoming 2020-2021 school year, including withholdings in the Foundation Formula in the amount of $123 million. (*Id.* at ¶ 11.)

---

[2] Wherever pagination employed by the parties differs from that assigned in CM/ECF, the CM/ECF pagination is employed herein.

On July 7, 2020, Defendant Bransfield issued letters headed "Reduction in Workforce Due to Financial Conditions" eliminating three of the District's nineteen non-certified positions: (1) the school resource officer; (2) the in-school suspension monitor; and (3) Plaintiff, the co-director of maintenance. (*Id.* at ¶ 12.) This action by Bransfield eliminated 16% of the District's non-certified staff. (*Id.* at ¶ 13.) On that day, Defendant Bransfield communicated to Plaintiff that she was no longer an employee of the District as of that date. (Doc. 120 at ¶ 50.) These three affected employees were informed they would be paid in full through July 31, 2020. (Doc. 115 at ¶ 16.)

At the time Defendant Bransfield issued the reduction in force letter to Plaintiff, the District did not have a specific dollar amount as to how much less monies it would receive for the 2020-21 school year, if any. (Doc. 120 at ¶ 65.) The Board historically amended budgets when there was less money or a budget shortfall affected the District, which Defendant Bransfield knew at the time of his action as to Plaintiff and the two other affected employees. (*Id.* at ¶¶ 73, 76.) Defendant Bransfield was aware he could confer with the Board to amend the budget in the event of a budget shortfall related to the 2020-21 approved budget. (*Id.* at ¶ 75.)

The Board had previously communicated to Bransfield if he was going to terminate or do anything to Plaintiff that could be perceived as retaliation, he was to pass it by the Board first. (*Id.* at ¶ 55.) Defendant Bransfield did not confer with the Board, any member thereof, or an attorney of the District prior to his decision regarding Plaintiff's employment as communicated to her on July 7, 2020. (*Id.* at ¶¶ 80, 82.) District policy required Bransfield to report termination of support staff members not under contract to the Board. (*Id.* at ¶ 129.)

In his deposition, Bransfield testified he believed the School Resource Officer and the ISS Monitor positions were expendable positions. (Doc. 115 at ¶ 14.) Likewise, Bransfield testified he believed the District could operate with only one Director of Maintenance and chose to keep Sam Porter. (*Id.* at ¶ 15.) On July 7, 2020, the same day as the letters were issued, Bransfield notified the Board of his action as to the three eliminated employees. (*Id.* at ¶ 17.)

Two days after Bransfield's action as to Plaintiff, on July 9, 2020, the Board President, Aaron York, called an emergency meeting of the Board. (*Id.* at ¶ 18.) The purpose of the meeting was to discuss a potential lawsuit by Plaintiff against the District following Bransfield's decision to terminate Plaintiff. (Doc. 120 at ¶ 88.) On July 13, 2020, the Board held an emergency meeting and unanimously voted in favor of a motion made by Board President York "to offer Loretta Nelson her position as Co-Director of Maintenance for the 2020-2021 school year." (Doc. 115-2

at 31 (Defendants' Exhibit Y).) York would later testify as Corporate Representative of the District that "[t]he [D]istrict's intent was that there would be no reduction in her pay or her position . . . that her position would be reinstated as if it never happened." (*Id.* at 36 (Defendants' Exhibit AA).) York admitted his fear was that, because of the timing of Defendant Bransfield's action as to Plaintiff, it could appear to be retaliation. (Doc. 120 at ¶ 104; Doc. 120-7 at 6 (Plaintiff's Exhibit G).)

Board member Stuber would later testify he felt Plaintiff should be offered her position back because he felt there was not a legitimate reason to get rid of Plaintiff. (Doc. 120 at ¶ 93; Doc. 120-6 at 5 (Plaintiff's Exhibit F).) Defendant Bransfield did not provide any additional financial information as of July 13, 2020, that had not been provided to the Board when it approved the 2020-21 budget. (Doc. 120 at ¶ 99.) Board member Jones would later testify that when Defendant Bransfield gave the budget as the reason for his action as to Plaintiff, it did not ring true because no new budget-related information was provided to the Board that they hadn't already known prior to June 19, 2020, when they passed the budget including Plaintiff as an employee. (Doc. 120 at ¶ 101; Doc. 120-9 at 4.)

Plaintiff initiated the instant lawsuit against Defendants on July 13, 2020. (Doc. 1.)

York communicated to Plaintiff on July 14, 2020, that the Board "would like to offer your job back and offer our apologies." (Doc. 120 at ¶ 110; Doc. 120-23 (Plaintiff's Exhibit 50).) In an email of July 18, 2020, York informed Defendant Bransfield and the District's Bookkeeper that the Board had decided to "restore Mrs. Nelson's position as co-director of maintenance" and that "[h]er employment records should not show any break in service." (Doc. 115-2 at 38 (Defendants' Exhibit BB).) York indicated the Board's desire that Plaintiff "be made whole and receive all pay and benefits as if she had never been separated from the [D]istrict." (*Id.*) Plaintiff communicated in a July 24, 2020 email to York about why she would not return to work at the District, including a numbered list of 29 detailed reasons. (Doc. 120 at ¶ 130.)

On August 6, 2020, York communicated to Plaintiff by letter that instead of Bransfield, Plaintiff would report to Principal Lori Allen, in an effort to alleviate and address Plaintiff's concerns about returning to work with the District. (Doc. 115 at ¶ 30.) On August 18, 2020, Defendant Bransfield was disciplined in a Letter of Reprimand, stating in part that he had violated Board policy by his "decision to terminate [Plaintiff]" and that "after considering all the facts, the Board disagreed with your decision and had to reverse this decision." (Doc. 120 at ¶ 127.)

4

Plaintiff returned the pay she received from the District in August 2020 and communicated to the District, "You waited too late and allowed Mr. Bransfield to hurt too many people. My husband would understandably NOT allow me to be hurt again." (Doc. 115-2 at 62 (Defendants' Exhibit LL).) York testified in his Corporate Representative deposition that the District's belief when Plaintiff returned the August 2020 pay was that she was voluntarily resigning. (*Id.* at 67 (Defendants' Exhibit NN).)

**Legal Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted." *Smith-Bunge v. Wis. Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon

5

which [he] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

## Discussion

Plaintiff's amended complaint alleges a claim of retaliation in violation of 29 U.S.C. § 215(a)(3). (Doc. 38.)

### I. Retaliation

Plaintiff's amended complaint claims her "voiced opposition and report of overtime violations and instituted legal action" that the Prior Lawsuit concerned "were motivating factors in the decision to terminate [P]laintiff" on July 7, 2020. (Doc. 38, ¶ 16.) Section 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [(the FLSA)], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]"

"To survive a motion for summary judgment on a retaliation claim, [Plaintiff] either must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] burden-shifting framework." *Yearns v. Koss Constr. Co.*, 964 F.3d 671, 674 (8th Cir. 2020) (internal quotation omitted). Because Nelson has not produced any direct evidence, "[w]e apply the familiar *McDonnell Douglas* ... burden-shifting framework to [Nelson's] retaliatory discharge claim." *Id.* (internal quotation omitted).

> Under this framework, [Plaintiff] must establish a prima facie claim of retaliation to survive summary judgment by providing evidence from which a jury could conclude that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between her protected activity and the adverse employment action.

*Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1011 (8th Cir. 2016) (citation omitted). However, if Defendants come forward with evidence of a legitimate, nonretaliatory basis for the adverse employment action, Plaintiff must then point to some evidence that Defendants' asserted basis is pretextual. *Id.* (citation omitted).

6

## II. Adverse Employment Action

Defendants argue Plaintiff cannot establish her prima facie case of retaliation because she has failed to provide evidence she suffered an adverse employment action or any material change in the terms or conditions of her employment. (Doc. 114 at 1.)

Adverse employment action means "termination, demotion, transfers involving changes in pay or working conditions, and negative evaluations used as the basis for other employment actions." *Huynh v. United States DOT*, 794 F.3d 952, 958 (8th Cir. 2015) (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999)) (other citation omitted). The Eighth Circuit has repeatedly defined an adverse employment action to be "a tangible change in working conditions that produces a material employment disadvantage [which can include] changes that affect an employee's future career prospects." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015). Not everything that makes an employee unhappy is actionable, *Duffy v. McPhillips*, 276 F.3d 988, 991-92 (8th Cir. 2002), and minor or unpalatable changes in duties or working conditions do not rise to the level of adverse employment action, *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from [engaging in a protected activity]." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) ("*White*"). The key question is whether a reasonable employee would have found the employer's action to be materially adverse. *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1132 (8th Cir. 2014).

Here, it is undisputed that on July 7, 2020, Defendant Bransfield, without prior communication to or approval from the Board or any attorney for the District, communicated to Plaintiff that she was no longer an employee of the District as of that date, and that she would be paid in full through July 31, 2020.

There is no dispute on the instant record that Defendants knew about Plaintiff's protected activity. Termination is an adverse action. *See Brown v. City of Jacksonville*, 711 F.3d 883, 893 (8th Cir. 2013) (finding the plaintiff's employment termination "would have been sufficiently adverse under our strict pre-*White* standard, *see, e.g., Cross v. Cleaver*, 142 F.3d 1059, 1073 (8th Cir.1998), and is more than sufficiently adverse under *White's* relaxed test. *See White*, 548 U.S. at 68."). Despite the Board's prompt efforts to take corrective action and Plaintiff's choice to refuse to accept its corrective efforts, Defendants have not cited and the Court is unaware of any

7

case in which termination was found not to be an adverse action in the context of a retaliation case. And Plaintiff argues Defendants' cited cases are distinguishable. The Court agrees. In only one of Defendants' cited cases was the Plaintiff terminated. In that case, the Court did not need to reach whether the termination was an adverse action and thus made no analysis on the issue. *Tatum v. City of Berkeley*, 408 F.3d 543, 553 (8th Cir. 2005).

Defendants contend that Plaintiff cannot show a materially adverse action because she was paid through July 31 and was offered a return to work. Defendants primarily rely on *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137 (8th Cir. 2008). As the Eighth Circuit has explained, in *Jackson*:

> [The plaintiff, Jackson] filed EEOC complaints in 2004 and 2005, alleging discrimination. Defendant UPS was not aware of the complaints. Following an accident in 2006, Jackson was disqualified as a feeder driver and demoted to shuttle driver, her previous job. Four days *after* her disqualification, she filed another complaint with the EEOC, alleging discrimination and retaliation. A supervisor determined she should not have been disqualified and should be reinstated. Before she was reinstated, UPS learned of the EEOC charges and decided to delay her reinstatement until the union grievance process was complete, which took three months. [The Eighth Circuit] found Jackson did not suffer a materially adverse action or establish a prima facie retaliation case. She could not establish a causal connection between her EEOC claims and the disqualification, because at the time of the disqualification UPS was unaware of her 2004 and 2005 claims, and the 2006 claim had not been filed. Although UPS delayed her reinstatement after learning of the 2006 charge, [the Eighth Circuit] found the delay not materially adverse, a "mere inconvenience," because its purpose was to allow the union grievance process to play out, she was at all times employed, and was reinstated with back pay and full seniority.

*Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (citations to *Jackson* omitted). In contrast, the Eighth Circuit explained in *Young-Losee*:

> Young-Losee complained to multiple people and filed a "formal complaint" with the human resources representative regarding harassment by her supervisor. On May 6, Young-Losee met with the plant supervisor, James Shelley, and two other managers regarding her formal complaint. At this meeting Young-Losee was not allowed to speak and, eventually, Shelley wadded up her complaint, threw it in the garbage can, told her it was "total bullshit," and said, "I want you out of here." Young–Losee left the meeting under the impression she was fired and did not return to work. In *Young-Losee*, [the Eighth Circuit] concluded that Shelley's actions of wadding up the complaint, calling it "total bullshit," and throwing it in the garbage can, followed by telling her to leave and that he never wanted to see her again, was direct evidence of retaliation. . . . Young-Losee was terminated during a meeting discussing her harassment complaint, at which Shelley disregarded Young-Losee's

8

> complaint and terminated her employment. The meeting's purpose was to address the complaint and took place within a month of Young-Losee's initial complaint of harassment.

*E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 n.2 (8th Cir. 2014) (citations to *Young-Losee* omitted). The *Young-Losee* Court found the circumstances distinguishable from those in *Jackson*, finding the defendant "certainly knew Young-Losee had filed a formal complaint of harassment and according to her, fired her in retaliation." 631 F.3d at 912-13. Accordingly, the Eighth Circuit concluded there was a materially adverse action because "[b]eing fired for making a discrimination complaint -- even if rescinded after two days -- might well dissuade a reasonable employee from making a complaint of harassment." *Id.* at 913. The Eighth Circuit then held the district court had erred in granting summary judgment for the defendant on the retaliation claim.

The instant case is analogous to *Young-Losee* and distinguishable from *Jackson*. There is no dispute Defendants certainly knew of Plaintiff's protected activity. Plaintiff asserts she was terminated in retaliation for that activity. Plaintiff thus raises at least a triable question of material fact as to whether Defendants subjected her to a material adverse employment action, because her alleged termination for bringing the Prior Lawsuit – even though she was offered her job back five days later -- might well dissuade a reasonable employee from participating in such protected activity.

### III. Causation

Next, Defendants argue Plaintiff cannot establish her prima facie case of retaliation because she has failed to provide evidence to show a causal connection between her protected activity and claimed adverse employment action. (Doc. 114 at 2.) Plaintiff counters that the timing of Plaintiff's termination in relation to her protected activity, "within a few months of the settlement agreement releasing claims against Bransfield for [overtime violations] and retaliation and []one day of dismissal of her lawsuit, raises an inference" that her termination was in retaliation for her protected activities. (Doc. 118 at 39.)

"Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine issue of fact on retaliation." *Prod. Fabricators, Inc.*, 763 F.3d at 973 (internal quotation marks omitted). "Although there is no definitive line drawn to show at what point a temporal connection establishes causation, [the Eighth Circuit] ha[s] held that two months is too long to support a finding of causation without

9

something more[.]" *Id.* (internal quotation marks omitted). On the other hand, the Eighth Circuit held in *Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106 (8th Cir. 2001), that proximity of a "matter of weeks" between the disclosure of a potentially disabling condition and an adverse employment action was sufficient to complete a prima facie case of discrimination. *Id.* at 1113-14. "The Supreme Court has said: 'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.'" *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)).

Here, on October 31, 2019, Plaintiff filed the Prior Lawsuit, alleging violations of the FLSA related to her pay and that of her fellow employees, which she later amended to include a retaliation claim. (Doc. 115 at ¶ 3.) The temporal proximity between the filing of the Prior Lawsuit and Plaintiff's termination on July 7, 2020, just over eight months, "so dilutes any inference of causation that [the Court is] constrained to hold as a matter of law that the temporal connection could not justify a finding in [Plaintiff's] favor on the matter of causal link." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (holding interval of two months between the protected activity (filing a discrimination complaint with the EEOC) and plaintiff's termination too long to establish causation based on temporal proximity alone).

Nevertheless, Plaintiff further argues that she has made a sufficient showing of causation because retaliatory motive can be inferred from evidence on the record that supplements the temporal proximity of her protected activity and her termination. The Court finds the following evidence could support a reasonable inference that Plaintiff's protected activity was a determinative factor in Bransfield's decision to terminate her:

a. Plaintiff's Prior Lawsuit was filed on October 31, 2019, it was settled on April 14, 2020, and on July 6, 2020, it was dismissed accordingly.

b. Defendant Bransfield prepared a 2020-2021 budget for the Board's review and approval. Defendant Bransfield's proposed budget estimated a 10% reduction in revenues. The proposed budget took into consideration potential funding restrictions and Plaintiff's employment with the District.

c. On June 19, 2020, the Board approved that budget, approved the job descriptions of non-certified (i.e., non-teacher) employees for the 2020-2021 school year, including Plaintiff,

10

and approved employing 19 non-certified employees for the 2020-2021 school year, including Plaintiff. Thus the approved budget took into consideration potential funding restrictions and Plaintiff's employment with the District.

d. On June 22, 2020, the District received its monthly Funding Formula payment that was approximately $65,000 less than the amount the District received in the preceding month (approximately a 35% reduction).

e. The Board historically amends budgets when there is less money or a budget shortfall affecting the District. When the budget was approved on June 19, 2020, Defendant Bransfield knew it could be amended if need be. Specifically, Defendant Bransfield knew he could approach the Board with new information regarding budget shortfalls (such as the June 22, 2020 reduced Funding Formula payment of $65,000).

f. Defendant Bransfield did not voice concerns to the Board regarding the June 22, 2020 reduced payment of $65,000. Defendant Bransfield did not seek amendment to the budget that was approved on June 19, 2020, before he issued Reduction in Workforce letters on July 7, 2020. On July 7, 2020, when Defendant Bransfield communicated to Plaintiff that she was no longer an employee, the June 19, 2020 budget was still in place.

g. Two weeks before Defendant Bransfield told Plaintiff she was no longer an employee, he submitted his resignation to be effective the following year. Specifically, on June 24, 2020, Defendant Bransfield resigned from his position with the District effective June 30, 2021, at the end of the upcoming 2020-2021 school year.

Accordingly, the Court finds Plaintiff thus raises at least a triable question of material fact as to causation.

### IV. Legitimate Nonretaliatory Reason

Defendants argue even if Plaintiff could establish a prima facie case of retaliation, her claim would still fail as a matter of law because the District had a legitimate, nonretaliatory reason for its actions, namely the COVID-19-related funding restrictions placed upon the District. (Doc. 114 at 2.)

Defendants' legitimate nonretaliatory reason of reduced funding is argued and previously set forth above as follows: in April, May, and June of 2020, DESE issued and published Administrative Memos detailing funding cuts and a series of progressive expenditure restrictions on public school districts during the 2019-2020 school year due to the COVID-19 pandemic. As

11

a result of the funding cuts, public school districts were informed they would not receive a classroom Trust Fund payment in May 2020 and would receive cuts to their Funding Formula funding (the primary method the state of Missouri uses to distribute money to public schools) for that school year. The District's June 2020 monthly Funding Formula payment in the amount of $112,926.93 was approximately $65,000 less the amount it received in the preceding months. Just over a week later, on June 30, 2020, DESE issued and published an Administrative Memo stating that, due to the continued economic downturn caused by COVID-19, public school districts were to incur $133.2 million in restrictions for FY21 (the upcoming 2020-2021 school year), including withholdings in the Foundation Formula in the amount of $123 million. Bransfield issued his July 7, 2020 "Reduction in Workforce Due to Financial Conditions" letters to three of the District's nineteen non-certified positions (16% of non-certified staff): 1) the school resource officer; 2) the in-school suspension (ISS) monitor; and 3) Plaintiff, the co-director or maintenance. In his deposition, Bransfield testified he believed the School Resource Officer and the ISS Monitor positions were expendable positions. Likewise, Bransfield testified he believed the District could operate with only one Director of Maintenance and chose to keep Sam Porter.

In light of this record, the Court concludes Defendants have come forward with evidence of a legitimate, nonretaliatory reason for Plaintiff's termination.

## V. Pretext

Once Plaintiff has established her prima facie case of retaliation, if Defendants come forward with evidence of a legitimate, nonretaliatory basis for the adverse employment action, she must then point to some evidence that Defendants' asserted basis is pretextual. *Fezard*, 809 F.3d at 1011 (citation omitted). Plaintiff can show pretext either "'by persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence.'" *White v. McDonnell Douglas Corp.*, 985 F.2d 434, 436 (8th Cir. 1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff argues Defendants' asserted legitimate nonretalitory reasoning is pretextual. Specifically, Plaintiff argues:

   a. Two days after Bransfield issued the reduction in force letter to Plaintiff, on July 9, 2020, the Board President, Aaron York, called an emergency meeting of the Board to discuss a potential lawsuit by Plaintiff against the District for Bransfield's decision to terminate her.

12

On July 13, 2020, the Board unanimously voted "to offer Loretta Nelson her position as Co-Director of Maintenance for the 2020-2021 school year."

b. York admitted his fear was that, because of the timing of Defendant Bransfield's action as to Plaintiff, it could appear to be retaliation.

c. Board member Stuber testified he felt Plaintiff should be offered her position back because he felt there was not a legitimate reason to get rid of Plaintiff. Defendant Bransfield did not provide any additional financial information as of July 13, 2020, that had not been provided to the Board when they approved the 2020-21 budget.

d. Board member Jones testified that when Defendant Bransfield gave the budget as the reason for his action as to Plaintiff, it did not ring true, because no new budget related information was provided to the Board that they hadn't already known prior to June 19, 2020, when it passed the budget including Plaintiff as an employee.

e. Defendant Bransfield was disciplined in a Letter of Reprimand, stating in part that he had violated Board policy by his "decision to terminate [Plaintiff]" and that "after considering all the facts, the Board disagreed with your decision and had to reverse this decision."

As such, the Court concludes Plaintiff raises at least a triable question of material fact as to pretext.

## VI. Damages

Defendants briefly argue in the alternative that summary judgment should be granted because, as a matter of law, "Plaintiff cannot show that she has suffered in recoverable damages." (Doc. 114 at 2.)

Defendants contend, without citation to authority, that Plaintiff suffered no actual damages because Plaintiff lost no pay as a result of their actions, and any losses were solely due to her decision not to return to work when the District reinstated her to her position. (Doc. 115 at 24.) In response, and likewise without citation to authority, Plaintiff makes the conclusory assertions that Defendants' damages argument is "uniquely convoluted, ridiculous and nonfactual," and that she "has compensatory damages of los[t] wages, loss of retirement and health benefits." (Doc. 118 at 50.) The Court finds this issue inadequately argued and insufficiently supported, and finds Defendants have not shown they are entitled to judgment as a matter of law as to actual damages.

Defendants also assert Plaintiff cannot establish a submissible claim for compensatory damages as to her claim of emotional distress. (Doc. 115 at 24.) Defendants argue Plaintiff can

13

provide no evidence of a "genuine injury" as required by the Eighth Circuit to establish a submissible case to recover compensatory damages for emotional distress. (*Id.*)

In response, Plaintiff makes the conclusory contention that "she has provided sufficient evidence to support her claim for emotional distress and injury" citing to her statement of additional material facts, number 132. (Doc. 118 at 50.) That paragraph alleges Plaintiff "has suffered and incurred headaches, diarrhea, sleep loss, crying, loss of wages[,] intestinal issues, humiliation, anguish [loss of] intimacy almost daily" and continues to suffer "loss of sleep, cries and gets emotionally upset when she sends out applications for employment which have to state she was terminated and then has to explain the history of events to prospective employers."[3] (Doc. 120 at ¶ 132.)

"An award of damages for emotional distress must be supported by competent evidence of 'genuine injury.'" *Kucia v. Se. Ark. Cmty. Action Corp.*, 284 F.3d 944, 947 (8th Cir. 2002) (quoting *Forshee v. Waterloo Industries,* 178 F.3d 527, 531 (8th Cir.1999)); *Carey v. Piphus,* 435 U.S. 247, 264 n. 20 (1978). "A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." *Id.* at 947-48 (internal quotation omitted).

The Court finds Plaintiff's allegations of emotional distress as set forth in her statement of additional material facts and supported in her affidavit, along with the circumstances of this case, are sufficient to raise at least a triable question of material fact as to Plaintiff's claim of compensatory damages for emotional distress. Therefore, Defendants are not entitled to summary judgment as to Plaintiff's claim for compensatory damages for emotional distress.

## Conclusion

The Court finds Plaintiff has raised triable issues of fact as to each element of her prima facie case of retaliation, that Defendant has raised triable issues of fact as to its legitimate, nonretaliatory reason for Plaintiff's termination, and that Plaintiff has raised triable issues of fact as to pretext and damages. Accordingly, Defendants' motion for summary judgment (Doc. 114)

---

[3] Plaintiff does not cite any evidence in the record in support of this statement of uncontroverted material fact, in violation of Rule 56(c). The Court located such support in the form of Plaintiff's affidavit (Doc. 120-1 at ¶ 14.) In light of the Court's obligation to view the evidence in the light most favorable to the nonmoving party, the Court finds it is appropriate under Rule 56(e)(4) to construe the statement as setting forth specific facts supported by an affidavit, that contribute to a showing that a genuine issue of material fact exists as to the issue of emotional distress.

is **DENIED,** and **"**Plaintiff's motion to strike or have deemed admitted certain responses by Defendants within Defendants' response to Plaintiff's statement of additional material and controverting facts" (Doc. 125) is **DENIED as moot.**

    **IT IS SO ORDERED.**

                                                /s/ Roseann A. Ketchmark
                                                ROSEANN A. KETCHMARK, JUDGE
                                                UNITED STATES DISTRICT COURT

DATED:  February 15, 2022